**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

| | |
|---|---|
| MALIBU MEDIA, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. |
| v. | ) 8:14-cv-659-VMC-EAJ |
| | ) |
| JOHN DOE subscriber assigned | ) |
| IP address 24.94.99.165, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

**JOHN DOE'S OMNIBUS MOTION TO DISMISS ACTION WITH
MOTION TO QUASH NON-PARTY SUBPOENAS OR ENTER PROTECTIVE ORDER,
WITH INCORPORATED MEMORANDUM OF LAW**

COMES NOW Defendant "John Doe,"[1] identified by Plaintiff only as the accountholder for Internet service having IP Address **24.94.99.165**, in a special, limited appearance by and through the undersigned attorney, and moves this Honorable Court, pursuant to Rules 12(b), 26(b) and (c), and/or 45(d)(3), to **DISMISS** the action and **QUASH** the subpoena seeking John Doe's private information, or issue a protective order protecting same.

**I.   Introduction**

On the surface, this case may seem like nearly any one of

---

[1] John Doe and the undersigned attorney are making a special, limited appearance only; this motion is not to be construed as a general appearance by either John Doe or the undersigned attorney. John Doe has not been subject to service of process in this action and does not intend to waive service of process.

the 2195[2] lawsuits Malibu Media has filed in the United States District Courts since February 2012.[3]  The number grows at an alarming rate, including 84 new cases in the last 21 days; it also includes 132 lawsuits in the Middle District of Florida. In truth, this case is actually is quite similar, or, in fact, near identical, those other lawsuits.  These suits are not so different from when Malibu Media started filing them.  True, the pleadings have been cleaned up — one Defendant per case — but one thing remains constant: They all, upon information and belief, are based on facts obtained from Malibu Media's investigator/expert, Tobas Fieser of IPP International UG, who resides in and conducts his investigations in Germany.

Now, recently discovered evidence, in other nearly identical Malibu Media cases, regarding Mr. Fieser's relationship with Malibu Media and the consequential unreliability of his investigations gives good reason for this Court to take a look at these cases, de novo, with a new light.  Moreover, new orders from the neighboring Southern District of Florida also give good reason for new review.

---

[2] Pacer.gov (last check May 22, 2014).

[3] *See also* Gabe Friedman, *The Biggest Filer of Copyright Lawsuits? This Erotica Web Site*, NEW YORKER (Mar. 15, 2014), available at http://www.newyorker.com/online/blogs/currency/2014/05/the-biggest-filer-of-copyright-lawsuits-is-this-erotica-web-site.html

**II.  Procedural History**

Like in most of the Malibu Media cases, shortly after this case was filed, Malibu Media moved for leave to issue a third-party subpoena on the Internet Service Provider that services the account identified by IP address "24.94.99.165" to identify the person or entity that subscribes to that account (Doc. 6).

This Court found "good cause" for the issuance of a subpoena (Doc. 7).  Movant, John Doe, asks that this Court, among other things, reconsider that finding of "good cause."

**III. Summary of Argument**

Similar to hundreds of other cases filed by pornographer Malibu Media across the country, the entire instant case against John Doe Internet service accountholder is based solely on the allegations of a single unlicensed "investigator"/expert, Mr. Tobias Fieser of IPP International UG, who resides in Germany.  As in all the cases, Mr. Fieser's (and thus Malibu Media's) allegations only identify an IP address, which identifies an Internet service account, not an individual.  Without Mr. Fieser's evidence pointing to this IP address, Malibu Media has not one shred of evidence to tie John Doe — the accountholder corresponding to that IP address — to any infringement whatsoever.

Recognizing that Mr. Fieser's geolocation software makes up the entire factual basis of Malibu Media's complaint, and that said software cannot identify who, if anyone, actually infringed Malibu Media's copyright, two judges in the Southern District of Florida (Miami) recently rejected similar lawsuits by Malibu Media, and these orders should be considered and followed.

But this motion is based on more than just new orders. Even if the Court were to decline to follow the judges in the Miami cases, the instant John Doe Internet Subscriber asks the Court to look again at the house of cards that is Malibu Media's case. Malibu Media's entire case is based on data obtained by an unlicensed investigator who has recently been disclosed in other similar cases to have a contingent-fee relationship with Malibu Media. Therefore, Malibu Media's only data is unlawful, unreliable, and inadmissible. Without this data and information, Malibu Media has no evidence at all against the instant John Doe — and no case. Because Defendant's privacy is at stake, not to mention the embarrassment of being associated with Plaintiff's pornography, the Court should not rely upon the allegations of this unlicensed investigator who has been recently disclosed to hold a contingent-fee relationship to Malibu Media.

Therefore, this case should be dismissed –– or Malibu Media should be required to show cause why the case should not be dismissed –– and the subpoena quashed, or a protective order entered to save John Doe the embarrassment and undue burden of having his/her private information released in conjunction with a case that is essentially, a house of cards, subject to imminent collapse.

### IV. Recent Orders in Miami have dismissed identical cases because allegations pertaining to an IP address are not enough to identify the infringing individual

On March 20, 2014, in a near-identical case, the Honorable Ursula Ungaro of the Miami Division, Southern District of Florida, entered an order dismissing Malibu Media's case. Case No. 1:14-cv-20213-UU [Doc. 10] (Copy at **Exhibit "1"**). In that case, Judge Ungaro had previously, *sua sponte*, issued a show-cause order[4] requiring Malibu Media to show good cause why the Court should reasonably rely on the use of geolocation or other technologies to establish the defendant's identity.  Malibu Media responded, and, after considering said response, Judge Ungaro entered an order dismissing the case, explaining:

> Plaintiff has not shown how this geolocation software can establish the

---
[4] Doc. 7 in 1:14-cv-20213-UU (March 5, 2014).

> identity of the Defendant. There is nothing that links the IP address location to the identity of the person actually downloading and viewing Plaintiff's videos, and establishing whether that person lives in this district. . . . Even if this IP address is located within a residence, the geolocation software cannot identify who has access to that residence's computer and who would actually be using it to infringe Plaintiff's copyright.

Exh. "1." Judge Ungaro also filed show-cause orders in at least two other Malibu Media cases, Case Nos. 0:14-cv-60681-UU [Doc. 5] and 0:14-cv-60682-UU [Doc. 5], after which Malibu Media filed notices of voluntary dismissal. Both cases were closed on March 27, 2014.

Next, on April 4, 2014, in another *Malibu Media v. Doe* case, Case No. 14-20216-FAM, Chief Judge Federico A. Moreno entered another order to show cause (copy at **Exhibit "2"**), therein citing to and following Judge Ungaro's order, and requiring Malibu Media to show cause why the court should rely on geolocation services to establish the Defendant's identity and location in this district.

Chief Judge Moreno's order was a deviation from at least one previous order he had entered in a similar case, where he had, prior to the entry of Judge Ungaro's order, granted

Malibu Media's motion for early discovery, such as one filed on January 31, 2014, in Case No. 1:14-cv-20218-FAM. In other words, Judge Ungaro's order was game changer.

Judges Ungaro and Moreno are not alone in finding that cases filed against IP subscribers are not sufficient to identify an individual infringer. In January, a district judge in Seattle entered an order of dismissal because "simply identifying the account holder associated with an IP address tells us very little about who actually downloaded *Elf-Man* using that IP address." *Elf-Man, LLC v. Cariveau*, 2014 WL 202096, No. C13-0507RSL (Jan. 17, 2014). One reason is that, with each Defendant identified only by an IP address, "the assumption that the person who pays for Internet access at a given location is the same individual who allegedly downloaded a single sexually explicit film is tenuous." *In Re: BitTorrent Adult Film Copyright Infringement Cases*, No. 11-cv-03995, 2012 WL 1570765, 2012 U.S. Dist. LEXIS 61447 (E.D.N.Y. May 1, 2012). Due to the increasing popularity of wireless routers, identifying a computer user by an IP address is unlikely, as different family members, visitors, or even neighbors could have performed the alleged downloads. *Id*. One court observed that as many as "30% of the names turned over by ISPs are not those of individuals who actually downloaded or shared

copyrighted material." *Digital Sin, Inc. v. Does 1-176,* 2012 WL 263491 *3 (S.D.N.Y. Jan. 30, 2012).

## V. **Malibu Media's entire case is based on unlawfully obtained information which would likely be inadmissible**

Next, the Court should consider that the information used to base Malibu Media's entire claim against Defendant was obtained unlawfully.  Malibu Media's entire factual basis against Defendant is derived solely from a report conducted by Plaintiff's "investigator," Mr. Fieser of IPP International UG, unlicensed entity improperly engaging in regulated activities.  Because Mr. Fieser's investigation results are Malibu Media's entire case and therefore massively prejudicial to John Doe, this evidence is hugely important to consider early in the proceedings because, if Mr. Fieser's investigation results are inadmissible, there is no case.

Malibu Media alleges in its complaint that its "investigator, IPP International UG, established a direct TCP/IP connection with the Defendant's IP address" (Doc. 1 ¶ 18) and "downloaded from Defendant one or more bits of each of the digital movie files identified by the file hashes on [Plaintiff's] Exhibit A." (Doc. 1 ¶ 19).

The individual behind IPP International UG is Tobias Fieser, a gentleman residing in and doing all of his

"investigation" from German, and IPP International UG is "a company organized under the laws of Germany" (Doc. 6-4 ¶ 1).

Because IPP and Mr. Fieser are unlicensed in Florida and have secured evidence for the purpose of using in the trial of a civil case, they are in violation of Florida's private investigator requirements as found in Chapter 493, Florida Statutes. Chapter 493 requires any person conducting investigative activities regulated thereunder to be properly licensed. Fla. Stat. § 493.6118(1)(g). Among other things, Florida defines "private investigation" to mean "the investigation by a person or persons for the purpose of obtaining information with reference to . . . The business of securing evidence to be used . . . in the trial of civil . . . cases and the preparation therefor." Fla. Stat. § 493.6101(17)(g). Furthermore, "[e]mploying or contracting with any unlicensed or improperly licensed person or agency to conduct activities regulated under . . . [Chapter 493], or performing any act that assists, aids, or abets a person or business entity in engaging in unlicensed activity, when the licensure status was known or could have been ascertained by reasonable inquiry," is a violation of Chapter 493 and grounds for discipline thereunder. Fla. Stat. § 493.6118(1)(n). Each individual licensed as a Private Investigator in Florida must

"[b]e a citizen or permanent legal resident alien of the United States or have appropriate authorization issued by the United States Citizenship and Immigration Services of the United States Department of Homeland Security." Fla. Stat. § 493.6106.

Because Mr. Fieser and IPP operate to secure evidence of copyright infringement to be used in the trial of this civil case and the preparation therefor, Florida law demands that they be licensed under the statute. Fla. Stat. § 493.6101(17)(g). As Mr. Fieser/IPP is conducting private investigation without proper licensing in Florida, his investigation of John Doe is in violation of Florida Statute Section 493. Furthermore, as Malibu Media has hired this private investigator to investigate Defendant on its behalf, it too is in violation of section 493.6118(1)(n), Florida Statutes, which makes the hiring of an unlicensed private investigator a violation of chapter 493.

Malibu Media has been filing these cases since 2012, yet has continued to use Mr. Fieser consistently, therefore consistently violating Florida Statute. Rather than find a proper, Florida-licensed investigator to conduct its investigations, it continues to utilize an unlicensed individual in Germany. Such continued violation of Chapter

493 calls into question the integrity of Malibu Media's only witness — and the entire basis behind the complaint.

## VI. Mr. Fieser's data is further inadmissible because his fee relationship with Malibu Media is at least in part contingent upon Malibu Media's recovery

The inquiry on Mr. Fieser does not stop there. Recent evidence uncovered in near identical Malibu Media cases in other jurisdictions reveals that Malibu Media's relationship with Mr. Fieser is based on an oral contingency-fee agreement. Like the instant case, these other Malibu Media cases are also filed against anonymous John Doe Internet subscribers and all based on Mr. Fieser's declarations and investigations.

Attached as **Exhibit "3"** to this motion is a declaration by Mr. Morgan Pietz,[5] and the exhibits to it are attached as **Exhibits 4-29** hereto. Mr. Pietz is a California-barred attorney who has represented numerous defendants in near-identical Malibu Media cases outside Florida.[6]

Mr. Pietz's declaration details an interrogatory

---

[5] Mr. Pietz's declaration was filed in other *Malibu Media, LLC v. Doe* cases filed in the District of Maryland, Case Nos. 1:14-cv-0223-MJG, 1:14-cv-0257-CCB, and 1:14-cv-0263-RDB.

[6] Mr. Pietz has also represented John Does in other, similar BitTorrent cases, the most notable of which is *Ingenuity 13 LLC v. John Doe*, 2:12-cv-8333-ODW JCX, 2013 WL 1898633 (C.D. Cal. 2013), *appeal dismissed* (Nov. 18, 2013), which case made national headlines a year ago when sanctions were issued against the "porno-trolling collective" of attorneys who had formed AF Holdings and Ingenuity 13 entities "for the sole purpose of litigating copyright-infringement lawsuits." *Id*.

propounded last year on Malibu Media in *Malibu Media, LLC v. John Doe*, N.D. Ill. No. 1:13-cv-6312, which asked Malibu to identify "all persons or business entities that have an interest, financially or otherwise, in this litigation. . . ." (Exh. 3 at 6, citing to Pietz Exh. B (here, Exh. 5) at 2. In its answer, verified on December 3, 2013, by one of Malibu Media's owners, Ms. Colette Field, Malibu explained, "**Pursuant to an oral contingency fee agreement, IPP International UG is entitled to a small portion of the proceeds from the resolution of this case in consideration for the services it provided**." (Exh. 3 at 5; Exh. 5 at 3). Mr. Pietz also references another interrogatory, answered on December 3, 2013, in *Malibu Media, LLC v. Hinds*, 1:12-cv-1117-WTL-DML (S.D. Ind.) that had inquired into Malibu's agreement with IPP, to which Malibu answered, "Plaintiff and IPP International have an oral agreement that was formed approximately 2.5 years ago. *This agreement has not ever been modified or amended*. The terms of this agreement are confidential and constitute a trade secret." (Exh. 3 at 5, citing to Exh. C (here, Exh. 6) at p. 5).

These interrogatory responses show clearly that Malibu Media's payment arrangement with Mr. Fieser is and has been a contingency-fee arrangement. The data on which Malibu Media

relies for the instant case was obtained by Mr. Fieser between October 2, 2013, and February 23, 2014, as shown in his declaration (Doc. 6-4 at ¶ 17). Therefore, by the date that Ms. Field verified the above-quoted interrogatory answers, Mr. Fieser had already been "investigating" the instant Defendant's IP address for about two months.

If indeed Mr. Fieser, whose data, as said before, is the entire basis of Malibu Media's case, is a contingent-fee witness, his testimony on which this case is based is unreliable and inadmissible. First, contingent-fee witnesses are simply not legal. Pursuant to Rule 4-3.4(b), Rules Regulating The Florida Bar, a lawyer may not enter into a contingent fee agreement with an expert witness (but may pay an expert a reasonable *noncontingent* fee). *See also* 18 U.S.C. § 201(c)(2) (making it illegal to give or offer "anything of value to any person, for or because of the testimony under oath or to be given by such person as a witness" in any court proceeding).

Furthermore, because a contingent-fee witness is naturally biased, his testimony is inadmissible. *See, e.g., Straughter v. Raymond*, 2011 WL 1789987, 2011 U.S. Dist. LEXIS 53195 at *9-10 (C.D. Cal. May 9, 2011) (collecting cases and holding that a contingent fee expert was *per se* excluded); *In*

re Mushroom Transp. Co. Inc., 70 B.R. 416, 418 (Bankr. E.D. Pa. 1987) (precluding an expert witness employed under a contingent fee agreement from testifying unless the method of compensation was altered); *Gediman v. Sears, Roebuck & Co.*, 484 F. Supp. 1244, 1248 (D. Mass. 1980) (stating it would have excluded expert appraisal testimony on valuation had it initially appeared that the witness had been compensated for his appraisal on a contingent fee basis). "An agreement to give an opinion on a contingent basis, particularly on an arithmetic scale, attacks the very core of expert testimony." *Id. Accord, Accrued Fin. Servs., Inc. v. Prime Retail, Inc.*, 2000 WL 976800 at *3 n.3 (D. Md. 2000) ("Financial arrangements that provide incentives for the falsification and exaggeration of testimony threaten the very integrity of the judicial process which depends upon the truthfulness of witnesses.").

Moreover, in a case like the instant one, where the investigator — who, as said before, is not even properly regulated by the state of Florida — is tracking BitTorrent users who have downloaded video files from a BitTorrent stream, the investigator's interest becomes even more suspect because the inherent bias has more tendency to encourage false testimony and also — potentially — the creation of a

"honeypot," or the uploading of certain video files into the BitTorrent stream with the intention of entrapping unsuspecting users into committing potential violations by downloading copyrighted material.[7] Malibu Media has based its claim for damages on the number of infringements Mr. Fieser notes; thus, the more videos that are initially seeded into the BitTorrent swarm, the greater Mr. Fieser's earning potential. Furthermore, the fact that Mr. Fieser is not licensed as a proper investigator, and therefore not regulated, as stated above, brings his testimony into further question.

### VII. All signs point to dismissal

If Mr. Fieser's testimony is unreliable and inadmissible, all references to and reliance on same should be stricken, pursuant to Rule 12(f) as being immaterial, impertinent, or scandalous. With these allegations removed, Malibu Media has not one shred of a factual allegation against John Doe — and therefore no case. In fact, without Mr. Fieser's data, Malibu

---

[7] *See, e.g., Copyright Troll Ran Pirate Bay Honeypot, Comcast Cable Confirms,* TORRENTFREAK Aug. 15, 2013, available at https://torrentfreak.com/copyright-troll-ran-pirate-bay-honeypot-comcast-confirms-130815/;

Joe Mullin, *Pirate Bay Suggests Prenda Did Create "Honeypot" for Downloaders*, ARSTECHNICA, June 7, 2013 http://arstechnica.com/tech-policy/2013/06/pirate-bay-data-suggests-prenda-did-create-honeypot-for-downloaders/

Media cannot even decipher John Doe's IP address. Therefore, a dismissal is proper pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Therefore, the granting of early discovery of allowing Malibu Media to obtain John Doe's identity from this unlawfully obtained IP address, is certain to result in a blatant violation of John Doe's right to privacy. If the case is allowed to continue and Malibu Media obtains John Doe's information, Malibu Media will attempt to strong-arm John Doe into paying unreasonably high settlement fees, the receipt of which, considering the inadmissibility of Malibu Media's key evidence, would be grossly unfair to the point that Malibu Media — not to mention Mr. Fieser, who would receive a cut of said settlement — would be unjustly enriched.

With dismissal this imminent, the outstanding subpoena seeking John Doe's information must be quashed. Should the case not be dismissed, considering the impropriety of Malibu Media's investigator and especially given the shameful nature of the pornography at issue, a protective order is proper to protect Defendant from the annoyance, embarrassment, oppression, and undue burden and which would forbid the disclosure of his/her private information to Malibu Media.

**VIII.   Conclusion**

Malibu Media's case is a house of cards, and collapse is imminent.  First, as an IP address is not a person, this Court should follow the trend set in this judicial division by the likes of Judges Ungaro and Moreno in similar or near-identical cases and dismiss the action.  Second, as the IP address in question was obtained unlawfully by an unlicensed investigator and potentially pursuant to a contingent witness-fee agreement, and, being that it is Malibu Media's *only* evidence against John Doe and the entire evidence on which the instant subpoena was allowed, the order granting early discovery should be overturned and the case dismissed, or, at the very least, Malibu Media should be ordered to show cause as to why all evidence and data from its Investigator/Expert, Mr. Tobias Fieser, and his company, IPP, should not be excluded and the case dismissed.

WHEREFORE, for the foregoing reasons, Defendant, "John Doe," respectfully requests that this Honorable Court enter an Order:

1. GRANTING this Motion;
2. DISMISSING the instant case, or, in the alternative, requiring Malibu Media to SHOW CAUSE why the case should not be dismissed;

3. QUASHING the outstanding subpoena seeking John Doe's identity, or, in the alternative, issuing a protective order protecting same;

4. VACATING this Court's Order granting Plaintiff leave to serve third-party subpoenas; and

5. Any other relief as is just and proper.

## CERTIFICATE OF GOOD-FAITH CONFERENCE

I hereby certify that, on May 20, 2013, I conferred, telephonically, with counsel for Plaintiff, who stated that Plaintiff is opposed to the relief requested in this motion.

/s/ Cynthia Conlin, Esq.
CYNTHIA CONLIN, ESQ.
Florida Bar No. 47012
Cynthia@cynthiaconlin.com

## CERTIFICATE OF SERVICE

I hereby certify that I filed electronically the foregoing with the Clerk of the Court via CM/ECF system which will notify electronically all parties.

*Attorney for John Doe:*

**Cynthia Conlin, P.A.**
1643 Hillcrest Street
Orlando, Florida 32803
Tel 407-965-5519
Fax 407-545-4397
www.cynthiaconlin.com

/s/ Cynthia Conlin, Esq.
CYNTHIA CONLIN, ESQ.
Florida Bar No. 47012
Cynthia@cynthiaconlin.com